## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **United States of America** | : | |
| | : | |
| **v.** | : | **No. 3:12-cr-140-VLB** |
| | : | |
| **Todd Parrilla** | : | |
| | : | **April 14, 2021** |
| | : | |

## ARTICULATION OF ORDER AND DECISION IMPOSING A MODIFIED CONDITION OF RELEASE

This is an articulation of the Court's April 1, 2021 order and decision to modify the conditions of the Defendant, Mr. Parrilla's, supervised release.  The Court imposed a condition that, in general terms, banned Mr. Parrilla from accessing pornography.  The decision to impose the pornography ban followed the Court's consideration of Mr. Parrilla's underlying offense conduct, his personal characteristics, and the conduct alleged in the violation report.  After holding a hearing and carefully considering the factors required under 18 U.S.C. § 3583(e), the Court concluded that the pornography ban was necessary to prevent circumvention of the purpose and spirit of the conditions of supervised release and to achieve the rehabilitative goals of supervised release.  The Court now writes to articulate in writing the legal principles and facts relied upon in reaching this decision.

### I.    BACKGROUND

On June 25, 2012, Mr. Parrilla entered into a plea agreement in which Mr. Parrilla agreed to plead guilty to a one-count information charging him with receipt and distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2).  [Plea

1

Agreement, Dkt. 22].  Accompanying the plea agreement was a written stipulation signed by Mr. Parrilla.  [*Id.* at 11–14].  The stipulation includes the following description of Mr. Parrilla's offense conduct:

> The forensic examiner found at least 100,000 images of child pornography and at least 10,000 videos that depicted child pornography on [Mr. Parrilla's] computers and hard drives. Some of the videos were over five minutes in length. Further, investigators found images of prepubescent boys or boys who had not attained the age of twelve as well as material that portrayed sadistic or masochistic conduct or other depictions of violence. The defendant acquired at least a portion of this collection by distributing child pornography for the receipt or expectation of receipt of a thing [of] value, specifically additional child pornographic material.
>
> On the date his house was searched, the defendant told the FBI that he lived by himself at the residence and he has been involved in trading child pornography for approximately five years. Parrilla indicated that the printed images of child pornography that were found in his bedroom closet belonged to him. He said that some of the images were printed years ago, while others had been printed more recently. He further stated that two terabyte detachable hard drive that was found connected to the desktop computer in his home office contained child pornography and the two detachable hard drives recovered from within a safe in Parilla's basement contained child pornography.

[*Id.* at 13].

On October 24, 2012, the Court sentenced Mr. Parrilla to a 60-month custodial sentence, to be followed by a life-long term of supervised release. [Judgment, Dkt. 67].  The Court also imposed the mandatory and standard conditions of supervised release as well as several special conditions.  [*Id.*].  One such condition required all of Mr. Parrilla's internet accessible devices to be equipped with monitoring software that allowed the Office of United States Probation to determine what Mr. Parrilla accessed on the internet.  [*Id.* at p.2, #2]. Another condition of Mr. Parrilla's supervised release prohibited him from

"accessing or possessing sexually explicit materials involving minors."  [*Id.* at p.2, #10].

On September 29, 2020, the Office of United States Probation issued a request to modify the conditions of Mr. Parrilla's supervised release to require him to turnover all his electronic devices to his Probation Officer based upon reasonable suspicion of contraband or evidence of a violation of the conditions of supervised release.  [Request to Modify, Dkt. 68].  In this request, the Probation Office indicated that it reviewed internet activity on Mr. Parrilla's approved cellular device and found numerous searches and images depicting nude/partially nude teenage boys.  [*Id.*].  The Court granted the request on October 1, 2020.  [*Id.*].

On December 21, 2020, the Probation Office petitioned the Court for a summons for Mr. Parrilla to appear before the court.  [Petition, Dkt. 69].  In the petition, the Probation Office charged Mr. Parrilla with violating the condition of supervised release that prohibited him from accessing or possessing sexually explicit materials involving minors.  [*Id.*].  The Probation Office reported that there were numerous internet searches, websites, and images appearing to depict nude/partially nude teenage boys on Mr. Parrilla's electronic device.  [*Id.*].  Further, the Probation Office indicated that at least two storage devices were attached to Mr. Parrilla's cell phone.  [*Id.*].

On January 6, 2021, the Probation Office issued a violation report stating that Mr. Parrilla surrendered an MP3 Player and his cell phone, which were sent to a forensic lab for further analysis.  [Violation Report, Dkt. 74].  The forensic report revealed that there were 'cookies' associated with pornographic websites as early

3

as May 2, 2020, two unknown storage devices were attached to the phone at some point, Mr. Parrilla utilized a application to download potentially pornographic images and videos, and his lack of history indicated he used a cleaning application. [*Id.*].   The Court infers that the use of the cleaning application is evidence of consciousness of guilt and that the software was used to remove records showing access to potentially unauthorized conduct.  [*Id.*].  The Probation Office conducted a search of Mr. Parrilla's home and was unable to locate the additional two storage devices reported to have been plugged into Mr. Parrilla's cell phone.  [*Id.*].  To date Mr. Parrilla has not turned over those devices.

On January 13, 2021, Mr. Parrilla appeared before the Court, via videoconference, with counsel.  The hearing was continued to afford Mr. Parrilla's counsel the opportunity to review additional allegations raised during the hearing.

On January 21, 2021, Mr. Parrilla appeared before the Court again via videoconference with counsel.  The hearing was continued because the Office of Probation indicated that the conduct that was the basis of the violation charge was under investigation by the Federal Bureau of Investigations ("FBI").

On February 5, 2021, the Probation Office issued an addendum to the violation report indicating that the forensic report from Mr. Parrilla's phone activity was turned over to the FBI.   [Violation Addendum, Dkt. 79].  The FBI reported that there was one sexually explicit image identified to which the age of the male depicted could not be determined by physical attributes and that there was a stock image on the device depicting an external storage device with directions as to how to use the device.  [*Id.*].  The FBI report also indicated that five images depicting

4

adult males were on the device, which were screenshots from websites that depicted the following partial and full URLs: https://twinkybf.com, http://twinksta, and https://gayboystu.  [*Id.*].  The FBI was unable to determine that the images were that of minors.  [*Id.*].

After reviewing the addendum, the Court scheduled a violation hearing to take place on April 1, 2021.  As stated during the hearing, the Court could not find that Mr. Parrilla violated the condition prohibiting him from accessing child pornography; but did find that Mr. Parrilla was intentionally attempting to circumvent the condition of supervised release by viewing materials that depicted adults who appeared to be minors.   The Court then imposed the following additional condition of supervised release:

> The Defendant may not view, screenshot, download, store, or otherwise possess, own, subscribe to, stream, rent, purchase or otherwise acquire or search for any material, including images, photos, videos, films, magazines, or books through any means including without limitation, telephone services, electronic media, computer programs, mail or other delivery services or computer service that depicts sexually explicit conduct as defined under 18 U.S.C. § 2256(2).

The Court takes this opportunity to articulate the legal and factual bases supporting the decision to impose this condition.

## II.     LEGAL STANDARD

A court may modify a condition of supervised release "at any time prior to the expiration . . . of the term of supervised release" after considering the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).  18 U.S.C. § 3583(e).  "Before modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right

to counsel and an opportunity to make a statement and present any information in mitigation."   Fed. R. Crim. P. 32(c)(1).   Consideration of whether to modify conditions of supervised release must be made in accordance with 18 U.S.C. § 3583(d) and U.S.S.G. § 5D-1.3(b).  The United States Sentencing Guidelines section 5D1.3(b) provides that:

> The court may impose other conditions of supervised release to the extent that such conditions (1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission.

*See also* 18 U.S.C. § 3583(d)(1)-(2); 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D) (outlining same).

The Court imposed what is colloquially identified as an 'adult pornography ban,' which has been upheld by the Second Circuit in several cases.  For example, the Second Circuit in *United States v. Cabot*, 325 F.3d 384 (2d Cir. 2003) affirmed a condition of supervised release that prohibited the defendant from possessing or having under his control any "matter" that is pornographic.  On the government's concession, the court vacated and remanded for future consideration the portions of the condition that prohibited the defendant "from possessing matters that depict or allude to "sexual activity" or which depict minors under the age of eighteen." *Id.* at 386.  The defendant in *Cabot* received this condition at sentencing of the underlying offense of persuading a minor to engage in sexually explicit conduct

for the purpose of producing visual depictions. *Id.* at 385.  There was no in-depth discussion on the circumstances justifying this imposition of this condition because the issues in *Cabot* did not relate to whether the prohibition was too harsh. *Cabot* stands for the proposition that a condition that states that "[t]he defendant shall neither possess not have under his control any "matter" that is pornographic" is not too broad.

In the same year that *Cabot* was decided, the Second Circuit also issued a decision in *United States v. Simmons*, 343 F.3d 72 (2d Cir. 2003), where the court affirmed the imposition of a condition of supervised release that prohibited the defendant from "possess[ing] or view[ing] any pornographic material, including videotapes, films, magazines, books and photographs, nor shall he subscribe to 'adult-only' movie channels." *Id.* at 77.  The defendant in *Simmons*, pled guilty to knowingly transporting a minor in foreign commerce for the purpose of engaging in illegal sexual conduct and using a minor to engage in sexually explicit conduct for the purpose of producing a videotape of the conduct. *Id.* at 74.  In investigating the defendant, the government learned that he drugged and sexually exploited a minor female and had a history of committing such conduct against an adult woman as well. *Id.* at 75.  The Second Circuit found that the condition was not overly broad but encouraged courts in the future to explicitly reference the statutory definition of pornography under 18 U.S.C. § 2556(2). *Id.* at 82.  The Second Circuit also found that the condition was reasonably related to a legitimate sentencing purpose and was sufficiently tailored to serve only such a legitimate purpose because the defendant had refused to participate in a Sexual Behavior

Clinic, was evaluated and found to be a high risk for general and violent recidivism, there was a connection between viewing and possessing pornography and his criminal behavior, and the defendant poses a threat to adults and minors. *Id.*

The Second Circuit in *United States v. Springer*, 684 Fed. Appx. 37 (2d Cir. 2017) affirmed the imposition of a supervised release condition that prohibited the defendant from "view[ing], possess[ing], own[ing], subscribing[ing] to or purchas[ing] any materials, including pictures, videotapes, films, magazine, books, telephone services, electronic media, computer programs, or computer services that depict sexually explicit conduct, as defined under 18 U.S.C. § 2256(2)." In *Springer*, the defendant had six sex offenses—five against minors and one against an adult—and four prior violations of supervised release. *Id.* at 38–39. After admitting to five new violations of supervised release, the district court entered the new condition. *Id.* at 39. The district court cited to the defendants "prior sex offenses; history of supervised release violations, including viewing pornography and attempting to delete his browsing history; and a 2012 mental health evaluation that recommended [the defendant] be restricted from viewing any pornography." *Id.* The Second Circuit concluded that:

> Bearing in mind the First Amendment protections that may apply to sexually explicit materials involving adults, *see United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72, 115 S. Ct. 464, 130 L. Ed. 2d 372 (1994), based on the record, we are satisfied that condition was reasonably related to [the defendant's] history of sex offenses, the need for specific and general deterrence and to protect public safety, and [the defendant's] treatment, and that it imposed no greater restraint on [the defendant's] liberty than was reasonably necessary to address the same.

*Id.* at 40.

8

In *United States v. Savastio*, 777 Fed. Appx. 4 (2019), the Second Circuit affirmed the imposition of a condition of release that prohibited the defendant's access to adult pornography.  The condition was imposed at sentencing for the underlying offense conduct, which involved two counts of possession of child pornography.  *Id.* at 5.  The Second Circuit found no plain error with the imposition citing to the defendant's "history of pornography-related crimes."  *Id.* at 7. Though the Second Circuit did not adopt a requirement that the district court provide specific factual findings for imposing this condition, it found that the district court's explanation did constitute specific factual findings.  *Id.*  The district court noted that the defendant's "urge . . . to be around things [he] shouldn't be around, sexual actions by children and adults and looking at the adults leads back to the child pornography viewing and that's why these provisions are put into [the defendant's] supervised release conditions."  *Id.* at 7.

To state simply, the Second Circuit has found that under certain circumstances an adult pornography ban can satisfy the 18 U.S.C. § 3583(d) requirements.

III.    DISCUSSION

Here, the Court finds that the pornography ban satisfies the requirements under § 3583(d).  The pornography ban is reasonably related to the nature and circumstances of the offense conduct and the history and characteristics of Mr. Parrilla.  The underlying offense conduct involved an enormous amount of child pornography.  [Plea Agreement at 13 ("[t]he forensic examiner found at least 100,000 images of child pornography and at least 10,000 videos that depicted child

9

pornography on [Mr. Parrilla's] computers and hard drives.")].  Mr. Parrilla clearly has a perversion for viewing child pornography.  This perversion has continued through his period of supervised release even though Mr. Parrilla has been receiving mental health treatment and has been supervised by the Office of Probation.  The material Mr. Parrilla accessed, which has not been found to be child pornography, is at the very least imitation child pornography or child-like pornography.  This is evidenced by his use of search terms such as "twink"[1] and "boy," and the FBI's inability to distinguish whether one of the images contained a minor or adult.  Mr. Parrilla has used access to pornography to violate the spirit of the condition of supervised release prohibiting the access of child pornography.  Thus, a pornography ban is reasonably related to the nature and circumstances of the offense conduct and the history and characteristics of Mr. Parrilla.

The pornography ban is also reasonably related to the need to afford adequate deterrence to criminal conduct.  There are two major forms of deterrence: general and specific deterrence.  "General deterrence justifies sentences in the name of discouraging the general public from recourse to crime."  Law of Sentencing, § 2.2 Deterrence.  "Specific deterrence defends criminal penalties as a way to dissuade individual offenders from repeating the same or other criminal acts."  *Id.*  While the concept of deterrence has received criticism; *id.*; it is a

---

[1] According to multiple sources, twink is generally a term for a young man with boyish appearance.  *See Twink*, Dictionary.com, available at: https://www.dictionary.com/browse/twink (last visited Apr. 8, 2021); *Twink (gay slang)*, Wikipedia, available at: https://en.wikipedia.org/wiki/Twink_(gay_slang) (last visited Apr. 8, 2021); *Age of the Twink,* NYTimes (May 14, 2018), available at: https://www.nytimes.com/2018/05/14/t-magazine/age-of-the-twink.html.

necessary consideration in determining a sufficient sentence.   § 3583(d).  Though admittedly attenuated, the pornography ban should have a general deterrent effect on the general public because it was instituted after Mr. Parrilla tried to test the limits of the conditions of  supervised release and circumvent the rehabilitative purpose of his conditions of supervised release.  Mr. Parrilla knew he was not permitted to access child pornography, but regardless accessed child-like pornography.  This clearly violated the spirit of the conditions of his supervised release and such conduct must be addressed.  More importantly, the pornography ban has a specific deterrent effect on Mr. Parrilla, who was intentionally walking a fine line between child-like and child pornography.  By imposing the pornography ban, Mr. Parrilla should be deterred from crossing the line and accessing illegal pornography.  Thus, a pornography ban is reasonably related to the need for the sentence imposed to afford adequate deterrence to criminal conduct.

The pornography ban is also reasonably related to the need to protect the public from further crimes of Mr. Parrilla.  The material Mr. Parrilla was searching for was, at the very least, imitation child pornography.  Mr. Parrilla has a history of accessing child pornography, thus he is at an increased risk of crossing the line from imitation to real child pornography.  By imposing a pornography ban, Mr. Parrilla is less likely to view images depicting minors or persons who appear to be minors. This condition protects the public, namely the victims of child pornography and their loved ones.

Further, Mr. Parrilla has been feeding his perversions by searching for and accessing this material.  Though Mr. Parrilla has not been previously charged with

sexually assaulting a minor, the Court fears that the continued exploration of his perversions could lead to developing inappropriate and illegal relations with a minor. By imposing a pornography ban, Mr. Parrilla is less likely to continue the exploration of his perversion and less likely to escalate into other illegal contact with a minor. Thus, a pornography ban is reasonably related to the need to protect the public from further crimes of Mr. Parrilla.

The pornography ban is reasonably related to the need to provide Mr. Parrilla with correctional treatment in the most effective manner. Mr. Parrilla has been engaged in counseling and he puts his rehabilitation at risk by engaging in conduct that could lead to accessing illegal and unhealthy material. His underlying offense conduct clearly exhibits that Mr. Parrilla has an extraordinarily unhealthy obsession with child pornography, more so than most child pornography offenders that have come before this Court. Meaning, Mr. Parrilla's unchecked, baseline perversion is significant and thus his rehabilitation would require more work than the average child pornography offender. By accessing images that imitate the materials that resulted in his conviction and that are morally repugnant to society, he only undermines and erodes the rehabilitative efforts he, his therapist and probation officer are making to enable him to become a law-abiding citizen. Thus, the pornography ban protects the correctional treatment Mr. Parrilla has already made and provides for the further correctional treatment in the most effective manner.

The pornography ban involves no greater deprivation of liberty than is reasonably necessary for the above stated purposes. The Court tried imposing a

12

ban on child pornography.  That condition has proven insufficient.  Mr. Parrilla is clever and has intentionally circumvented the spirit of the conditions of supervision, though perhaps not the letter of the original conditions. While a pornography ban is not appropriate in every case, it is appropriate here for the reasons stated above.

## IV.  CONCLUSION

As ordered during the violation hearing on April 1, 2021, the Court modifies the conditions of supervised release by adding the following condition:

> The Defendant may not view, screenshot, download, store, or otherwise possess, own, subscribe to, stream, rent, purchase or otherwise acquire or search for any material, including images, photos, videos, films, magazines, or books through any means including without limitation, telephone service, electronic media, computer programs, mail or other delivery services or computer service that depicts sexually explicit conduct as defined under 18 U.S.C. § 2256(2).

**IT IS SO ORDERED.**

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: April 14, 2021